UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

IN RE:
THOMAS A. ZINE,
        DEBTOR.

Chapter 7
Case No. 08-16984-WCH

**MEMORANDUM OF DECISION**

**I. INTRODUCTION**

      The matter before the Court is the "Motion for Sanctions for Violation of the Discharge Injunction, Fair Debt Collection Practices Act, Fair Credit Reporting Act and M.G.L c. 93A" (the "Motion for Sanctions") filed by Thomas A. Zine (the "Debtor") and the "Opposition of Bayview Loan Servicing, LLC to Debtor's Motion for Sanctions" (the "Opposition") filed by Bayview Loan Servicing, LLC ("Bayview").  Through the Motion for Sanctions, the Debtor alleges that Bayview and BAC Home Loan Servicing ("BAC"), as servicers for Bank of New York Mellon ("BNY"), violated the discharge injunction and Mass. Gen. Law ch. 93A, § 1 *et seq.* ("Chapter 93A") by continuing collection efforts post-discharge.[1]  For the reasons set forth below, I will grant in part the Motion for Sanctions with respect to liability and schedule the matter for a further evidentiary hearing.

---

[1] The Motion for Sanctions also sought damages under the Fair Debt Collection Practices Act, 15 U.S.C. § 1601 *et seq.*, and the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et. seq.*, but the Debtor subsequently withdrew those claims, conceding that they arose after the bankruptcy case was closed and do not impact the administration of the bankruptcy estate.  Response to Opposition of Bayview Loan Servicing, LLC to Debtor's Motion for Sanctions (the "Response"), Docket No. 119 at ¶¶ 1-2.

1

## II. <u>BACKGROUND</u>

From the outset, I note that the facts are incomplete and confusing. Matters are further complicated by the fact that the Debtor filed his affidavit in support of the Motion for Sanctions (the "Affidavit") with accompanying exhibits after Bayview filed the Opposition, and Bayview's counsel, Attorney Richard Demerle, inexplicably failed to appear at the hearing on the Motion for Sanctions. Notwithstanding these difficulties, the Affidavit and documents attached to thereto, the authenticity of which Bayview has not contested, in conjunction with the Court's own records,[2] clearly establish that Bayview violated the discharge injunction. An assessment of damages, however, will require an evidentiary hearing at which time the Debtor will be required to present his case with greater specificity. For present purposes, the following recitation will suffice.

The Debtor filed a voluntary Chapter 7 petition on September 17, 2008. On "Schedule A – Real Property" ("Schedule A"), the Debtor listed an equitable interest in a condominium located at 4945 Cougar Court in Naples, Florida (the "Property"). It is undisputed that the Property was subject to a mortgage securing a loan obligation (the "Mortgage Loan"). On "Schedule D – Creditors Holding Secured Claims" ("Schedule D"), the Debtor listed Countrywide Home Loans ("Countrywide") as holding a mortgage on the Property and Bermuda Palms of Naples ("Bermuda Palms") as holding a statutory lien. On the "Chapter 7 Individual Debtor's Statement of Intention," the Debtor indicated the Property would be surrendered.

On September 18, 2008, Warren Agin was appointed as Chapter 7 trustee (the "Trustee"). The Debtor appeared and was examined at the meeting of creditors held pursuant to 11 U.S.C. § 341 on October 20, 2008, and again on November 6, 2008. The Debtor received a

---

[2] I may take judicial notice of the Court's own records. *In re Hyde*, 334 B.R. 506, 508 n. 2 (Bankr. D. Mass. 2005).

2

discharge on April 27, 2009. Approximately two months later, on June 24, 2009, BAC, who apparently serviced the Mortgage Loan at that time, reported a zero past due and zero outstanding balance with the following notation: "Chapter 7 bankruptcy; Chapter 7; Included in bankruptcy; Closed 04/09" (the "2009 Credit Report").[3]

On November 19, 2009, BNY[4] filed a "Motion for Relief from Stay and For Authority to Foreclose Mortgage" (the "Motion for Relief") with respect to the Property, arguing that the Debtor had failed to make regular mortgage payments and lacked equity in the Property. In the Motion for Relief, BNY explained that it was the current holder of a note originally given by the Debtor to TIB Bank and the mortgage securing the note by virtue of an assignment from Mortgage Electronic Registration Systems, Inc. ("MERS"), as nominee for TIB Bank. The assignment, which was attached to the Motion for Relief, further reflects that BAC was also the servicer for BNY.[5] Neither the Trustee nor the Debtor filed an objection. On December 3, 2009, I granted the Motion for Relief.

On June 26, 2010, the Trustee filed the "Chapter 7 Trustee's Final Account and Distribution Report Certification that the Estate has Been Fully Administered and Application to be Discharged" (the "Final Report and Account"). I approved the Final Report and Account on July 21, 2010, and entered an order discharging the Trustee and closing the case.

---

[3] Ex. A, Docket No. 115.

[4] As successor in interest by way of merger with Bank of New York as Trustee for the Certificate Holders of CWALT, Inc. Alternative Loan Trust 2005-72, Mortgage Pass-Through Certificates, Series 2005-72.

[5] As it appears that TIB Bank was the original holder of the note, MERS was the holder of the mortgage, and BAC was servicer of the Mortgage Loan, it is wholly unclear what role, if any, Countrywide had with respect to the Mortgage Loan. Ultimately, however, this issue is not pertinent to the disposition of this matter because BAC reported the Mortgage Loan as "Included in bankruptcy" on the Debtor's credit report in April of 2009, and BNY subsequently appeared to seek relief from stay. Thus, I am satisfied that the Mortgage Loan was adequately scheduled. Bayview concedes as much. Opposition, Docket No. 113 at ¶ 5 ("On April 27, 2009, the Court entered an order granting the Debtor a discharge of his debts, including the Loan.").

3

In the Motion for Sanctions, the Debtor reports that the Property was ultimately taken by Bermuda Palms at a foreclosure sale conducted on January 19, 2011.[6] Bayview did not contest or otherwise respond to this statement in the Opposition. The Debtor presumes that foreclosure sale proceeds were inadequate to satisfy the Mortgage Loan. On October 16, 2012, a year and a half after the foreclosure, Bayview replaced BAC as servicer for the Mortgage Loan.

Since the foreclosure, the Debtor has been renting a home for himself and his family in anticipation of purchasing a new home once he is financially able. In the Affidavit, the Debtor avers that he obtained another credit report in conjunction with his application for a home mortgage.[7] This time, however, Bayview reported the Mortgage Loan as "open; account delinquent 180 days past due date; bankruptcy chapter 7; included in bankruptcy," with a balance of $254,699.00 and a past due amount of $90,060.00.[8]

The timing and sequence of the credit report and the following events is unclear. In the Affidavit, the Debtor asserts this occurred on November 6, *2012*, but the attached credit report is dated November 6, *2013* (the "2013 Credit Report").[9] This might otherwise seem like a mere typographical error, but the Affidavit further states that the Debtor received numerous phone calls from Bayview representatives seeking to collect the debt between October, 2012, a month before he claims to have discovered Bayview's impact on his credit report, and December, 2013.[10] Given that the Debtor attached the 2013 Credit Report, and not one dated November 6, 2012, it calls the Debtor's averments regarding the timing of the phone calls into question. In

---

[6] Motion for Sanctions, Docket No. 104 at ¶ 8.

[7] Affidavit, Docket No. 114 at ¶ 7.

[8] Ex. B, Docket No. 115; Affidavit, Docket No. 114 at ¶ 7.

[9] Ex. B, Docket No. 115; Affidavit, Docket No. 114 at ¶ 7.

[10] Affidavit, Docket No. 114 at ¶ 11.

any event, the 2013 Credit Report reflects that the number in the "Months Reviewed" column of the Bayview notation is 12, evidencing that Bayview had been reporting the Mortgage Loan since November, 2012.[11]

Upon discovering that Bayview was reporting the Mortgage Loan as "open" on his credit report, the Debtor notified Bayview's representatives over the phone and faxed them a copy of the discharge order.[12] The Debtor did not retain a copy of the facsimile transmitted to Bayview. In his Affidavit, however, the Debtor explains that in a subsequent phone call, Bayview acknowledged that the facsimile had been received and was reflected in their records.[13] This was later memorialized in a letter the Debtor received from Bayview dated January 20, 2014, which provided in relevant part:

> Dear Mr. Zine:
>
> We are writing in response to your inquiry regarding the credit information pertaining to the above account.
>
> Please note we have submitted an electronic adjustment to all pertinent credit bureaus removing Bayview's tradeline from your credit report. A copy of the report generated is enclosed herewith for your records.
>
> Please be advised we are aware that your loan was discharged through Chapter 7 Bankruptcy on December 3, 2009. Please disregard any correspondence you may have received from Bayview as it was sent in error.[14]

Apparently, this was not the end of the matter. In the Affidavit, the Debtor asserts that Bayview "continued to send statements to the Debtor seeking payment," but neither the Affidavit

---

[11] Ex. B, Docket No. 115.

[12] Affidavit, Docket No. 114 at ¶ 9. Again, the Debtor claims this occurred in November, 2012, but the attached 2013 Credit Report is from a year later.

[13] *Id.* at ¶ 10.

[14] Ex. A, Docket No. 104-1.

nor the Motion for Sanction indicate when Bayview began sending such statements.[15] The only mortgage statement attached to the Affidavit is dated April 16, 2014 (the "April Mortgage Statement").[16] In addition to indicating an outstanding balance of $254,699.83, the April Mortgage Statement states, in bolded print, in three separate places on the first page that the "Amount Due" was $99,313.86, and twice states that payment was due by May 1, 2014.[17] The first page of the April Mortgage Statement also contains a bolded section titled "**Delinquency Notice**."[18] Notably, however, the bottom of the second page of the April Mortgage Statement contains the following notice and disclaimer in smaller, non-bolded print:

> Bayview Loan Servicing, LLC, is a debt collector. This letter is an attempt to collect a debt, and any information obtained will be used for that purpose. To the extent that your obligation has been discharged or is subject to an automatic stay in bankruptcy this notice is for information purposes only and does not constitute a demand of payment or any attempt to collect such obligation.[19]

The April Mortgage Statement was the last the Debtor received.[20]

On March 20, 2014, the Debtor, through counsel, sent a demand letter (the "Demand Letter") to Bayview, insisting that it cease and desist all communication with the Debtor.[21] The Demand Letter further alleged violations of the discharge injunction, the Fair Debt Collection Practices Act (the "FDCPA"),[22] the Fair Credit Reporting Act (the "FCRA"),[23] and Chapter

---

[15] Affidavit, Docket No. 114 at ¶ 13.

[16] Ex. C, Docket No. 115.

[17] *Id.*

[18] *Id.*

[19] *Id.*

[20] Affidavit, Docket No. 114 at ¶ 13.

[21] Ex. B, Docket No. 104-1.

[22] 15 U.S.C. § 1601 *et seq.*

93A[24] and sought payment of $250,000.00 in damages.[25] The Demand Letter further sought a response within thirty days pursuant to Mass. Gen. Laws ch. 93A, § 9.[26]

The Debtor received three written responses to the Demand Letter. The first, dated May 12, 2014, simply acknowledges receipt of the Demand Letter.[27] The second, dated June 2, 2014, provides in relevant part:

> This letter is in response to the recent correspondence request received in our office regarding the above referenced account.
>
> After a review of the account, our records show that Bayview Loan Servicing acquired the servicing of the loan on October 16, 2012. Our records also indicate that Mr. Thomas A. Zine's account is in active Chapter 7 Bankruptcy as of September 17, 2008. Please be advised that we have updated our systems to cease and desist communication with the borrower.[28]

The third letter, dated July 8, 2014, came from Attorney Demerle and disputed the Debtor's entitlement to damages under the FDCPA, the FCRA, and Chapter 93A, but suggested Bayview's willingness to discuss the alleged discharge injunction violations.[29]

Prior to receiving any response from Bayview or its counsel, the Debtor moved to reopen the case on May 1, 2014. The motion to reopen was granted on May 20, 2014, and the Debtor filed the Motion for Sanctions on June 24, 2014. After several extensions, Bayview filed the Opposition on July 31, 2014. On the same date, the Debtor filed the Affidavit. BAC, who the Debtor accuses of negligently selling or transferring its servicing rights to Bayview, did not

---

[23] 15 U.S.C. § 1681 *et. seq.*

[24] Mass. Gen. Laws ch. 93A, § 1 *et seq.*

[25] Ex. B, Docket No. 104-1.

[26] *Id.*

[27] Ex. C, Docket No. 104-1.

[28] Ex. D., Docket No. 104-1.

[29] Opposition, Docket No 113 at Ex. A.

7

respond to the Motion for Sanctions. On August 1, 2014, I conducted a hearing on the Motion for Sanctions at which neither Bayview nor its counsel appeared. At the conclusion of the hearing, I took the matter under advisement, and afforded the Debtor an opportunity to file a reply to the Opposition, which he did on August 19, 2014.

### III. POSITIONS OF THE PARTIES

    A. The Debtor

The Debtor argues that Bayview repeatedly violated the discharge injunction by reporting the Mortgage Loan as due and owing to the three credit reporting bureaus, repeatedly calling him seeking to collect the Mortgage Loan, and sending mortgage statements. He asserts the 2009 Credit Report evidences that the BAC had actual notice of the discharge. Thus, the Debtor contends that Bayview had at least constructive notice of the discharge as BAC's successor in light of the notations regarding bankruptcy contained on his credit reports. In any event, the Debtor argues that Bayview was provided with actual notice of the discharge in November, 2012, when he faxed a copy to Bayview.

The Debtor urges that the case law cited by Bayview is neither binding nor persuasive on this Court, and are otherwise factually distinguishable. He explains that the debtors in *In re Vogt*[30] and *In re Irby*[31] failed to demonstrate that the defendant's credit reporting was also an act to collect a debt. Here, however, the Debtor asserts that Bayview's credit reporting clearly sought to collect a debt because it also contemporaneously sent mortgage statements and made

---

[30] *Vogt v. Dynamic Recovery Servs. (In re Vogt)*, 257 B.R. 65 (Bankr. D. Colo. 2000).

[31] *Irby v. Fashion Bug (In re Irby)*, 337 B.R. 293 (Bankr. N.D. Ohio 2005).

8

calls for that purpose.[32] He further argues that Bayview's credit reporting alone evidences an act to collect a debt because Bayview supplanted the zero balance reported by BAC.

The Debtor also contends that Bayview's credit reporting was inaccurate in several respects. First, by the time Bayview acquired the servicing rights to the Mortgage Loan, the property had been foreclosed and the claim was no longer secured. Second, the Debtor had been previously discharged, so any deficiency arising from the foreclosure is not collectable from him. Third, reporting a balance due and past due was clearly misleading because it was not a current obligation.

The Debtor further asserts that BAC is liable for the damages he has suffered on account of Bayview's actions because BAC was negligent in selling or transferring their rights in the Mortgage Loan which led to Bayview's collection activity.

In sum, the Debtor seeks attorney's fees, actual and punitive damages, as well as treble damages under Chapter 93A. He asserts that his damages should be calculated by the difference between the interest rate he could have obtained on a new mortgage had Bayview not reported the Mortgage Loan open and the rate he obtained now that the notation has been removed. To the extent necessary, the Debtor requests an evidentiary hearing.

B. Bayview

From the outset, Bayview asserts that the first date that the Debtor offers in support of it having actual notice of the discharge is January 20, 2014. In any event, Bayview contends that the discharge injunction does not prohibit a secured creditor from reporting a debt as due and owing. In support, Bayview relies on *In re Vogt*,[33] *In re Irby*,[34] and *In re Mahoney*.[35] Finally,

---

[32] The Debtor posits that Bayview's call logs are the best evidence of these calls and, to the extent necessary, requests that I compel Bayview to turnover those records.

[33] *In re Vogt*, 257 B.R. at 70-72.

Bayview argues that the Debtor has not met his burden regarding any of the alleged communications—the phone calls, letters, and statements—because he has not provided any specific information such as the date or name of the person with whom the Debtor communicated, or copies of the written communications.

## IV. <u>DISCUSSION</u>

In a Chapter 7 case, unless a party in interest timely objects, "the court shall grant the debtor a discharge."[36] Subject to the exceptions enumerated in 11 U.S.C. § 523(a) which are not relevant here, "a discharge under [§ 727(a)] discharges the debtor from all debts that arose before the date of the order for relief under [Chapter 7]."[37] Once entered, the discharge "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset [a discharged debt] as a personal liability of the debtor . . ."[38] As recognized by the United States Court of Appeals for the First Circuit, "[t]he injunction affords honest but unfortunate debtors with a 'fresh start' from the burdens of personal liability for unsecured prepetition debts and thus advances the overarching purpose of the Bankruptcy Code."[39]

While there is no specific provision in the Bankruptcy Code to provide redress for violations of the discharge injunction, the First Circuit has held that "'[a] bankruptcy court is

---

[34] *In re Irby*, 337 B.R. at 296.

[35] *Mahoney v. Washington Mutual (In re Mahoney)*, 368 B.R. 579 (Bankr. W.D. Tex. 2007)

[36] 11 U.S.C. § 727(a).

[37] 11 U.S.C. § 727(b).

[38] 11 U.S.C. § 524(a)(2).

[39] *Canning v. Beneficial of Maine, Inc. (In re Canning)*, 706 F.3d 64, 69 (1st Cir. 2013). *See Pratt v. Gen. Motors Acceptance Corp. (In re Pratt)*, 462 F.3d 14, 17-18 (1st Cir. 2006).

authorized to invoke § 105 to enforce the discharge injunction imposed by § 524 and order damages for the [debtor] . . . if the merits so require.'"[40] "Section 105(a) confers 'statutory contempt powers' which 'inherently include the ability to sanction a party.'"[41] "[P]unitive damages may also be awarded in the discretion of the court,"[42] but are most appropriate "where there has been an 'arrogant defiance' of the Bankruptcy Code."[43] Thus, if a debtor can establish a violation of the discharge injunction, the proper remedy is a motion for contempt.[44]

To make out a prima facie case for contempt of a discharge order, the debtor must show that the creditor knew that the discharge order entered and intentionally engaged in conduct that violated it.[45] "In assessing violations of the . . . discharge injunction, the core issue is whether the creditor acted in such a way as to 'coerce' or 'harass' the debtor improperly."[46] The standard is an objective one, and "even legitimate state-law rights exercised in a coercive manner might impinge upon the important federal interest served by the discharge injunction."[47] Additionally, alleged violative acts need not be viewed in isolation, but also should be considered under the

---

[40] *In re Pratt*, 462 F.3d at 17 (*quoting Bessette v. Avco Fin. Servs., Inc.*, 230 F.3d 439, 445 (1st Cir. 2000)); *see In re Canning,* 706 F.3d at 69; *U.S. v. Rivera Torres (In re Rivera Torres)*, 432 F.3d 20, 23 (1st Cir. 2005); *Lumb v. Cimenian (In re Lumb)*, 401 B.R. 1, 6 (B.A.P. 1st Cir. 2009).

[41] *Fatsis v. Braunstein (In re Fatsis)*, 405 B.R. 1, 7 (B.A.P. 1st Cir. 2009) (*quoting Ameriquest Mortgage Co. v. Nosek (In re Nosek)*, 544 F.3d 34, 43-44 (1st Cir. 2008)).

[42] *In re Barry*, 330 B.R. 28, 37 (Bankr. D. Mass. 2005).

[43] *Curtis v. LaSalle Nat'l Bank (In re Curtis)*, 322 B.R. 470, 486 (Bankr. D. Mass. 2005).

[44] *Laudani v. Wells Fargo (In re Laudani)*, 506 B.R. 19, 28 (Bankr. D. Mass. 2014).

[45] *McDonald v. Norwest Fin., Inc. (In re McDonald)*, 265 B.R. 3, 9 (Bankr. D. Mass. 2001); *see also In re Canning*, 706 F.3d at 70 (1st Cir. 2013) (debtor bears the burden of proof).

[46] *In re Pratt*, 462 F.3d at 19.

[47] *Id. See In re Canning*, 706 F.3d at 73; *Paul v. Inglehart (In re Paul)*, 534 F.3d 1303, 1308 (10th Cir. 2008).

totality of the circumstances to discern whether they evidence a pattern of coercive behavior.[48] The majority of courts within the First Circuit have held that violations of the discharge injunction must be proven by clear and convincing evidence,[49] meaning "highly probable or reasonably certain."[50]

With respect to the first element, I find that Bayview had notice of the Debtor's discharge prior to the acts in question. Notably, Bayview does not dispute it had notice. Instead, it merely claims that the earliest the Debtor can demonstrate Bayview's actual knowledge is January 20, 2014. To the contrary, the 2013 Credit Report establishes that Bayview had actual knowledge of the Debtor's bankruptcy in November, 2012, placing Bayview on inquiry notice of the discharge. The record is also clear that BAC, Bayview's predecessor in interest, had actual knowledge of the discharge in June, 2009, when it reported the Mortgage Loan "Included in bankruptcy; Closed 04/09."[51] Moreover, BNY, the holder of the note and mortgage, appeared in the Debtor's bankruptcy case to seek relief from stay, which imposed an affirmative duty on BNY's counsel to review the docket.[52] In sum, in November, 2012, Bayview either had actual knowledge of the discharge, actual knowledge of facts that should have compelled it to investigate the status of the

---

[48] *See, e.g., In re Mahoney*, 368 B.R. at 584; *In re Goodfellow*, 298 B.R. 358, 362 (Bankr. N.D. Iowa 2003); *Miele v. Sid Bailey, Inc.*, 192 B.R. 611, 613 (S.D.N.Y. 1996).

[49] *Ellis v. Dunn (In re Dunn)*, 324 B.R. 175, 179 (D. Mass. 2005); *In re Al-Jiboury*, 344 B.R. 218 (Bankr. D. Mass. 2006); *Parker v. Boston Univ. (In re Parker)*, 334 B.R. 529, 538 (Bankr. D. Mass. 2005); *but see In re Pratt*, 324 B.R. 1, 5 (Bankr. D. Me. 2005) *rev'd*, 462 F.3d 14, 21 (1st Cir. 2006)(finding the record did not require determination of the quantum of evidence issue).

[50] *In re Sarafoglou*, 345 B.R. 19, 24 (Bankr. D. Mass. 2006) ("I construe clear and convincing evidence in a more aphoristic manner: situated somewhere on the evidentiary spectrum between the preponderance of the evidence and beyond a reasonable doubt standards . . . ."). *See Buildex Inc. v. Kason Indus., Inc.*, 849 F.2d 1461, 1463 (Fed. Cir. 1988) ("Although not susceptible to precise definition, clear and convincing evidence has been described as evidence which produces in the mind of the trier of fact an abiding conviction that the truth of [the] factual contentions are highly probable."); *Black's Law Dictionary* 577 (7th ed. 1999) (defining "clear and convincing evidence" as "evidence indicating that the thing to be proved is highly probable or reasonably certain.").

[51] Ex. A, Docket No. 115.

[52] *See Balzotti v. RAD Invs., LLC (In re Shepherds Hill Dev. Co., LLC)*, 316 B.R. 406, 415 (B.A.P. 1st Cir. 2004).

Debtor's bankruptcy, or actual knowledge otherwise should be imputed to it based on the knowledge of BAC and BNY.[53]

As to the second element, the Debtor argues that Bayview violated the discharge injunction by reporting the Mortgage Loan as due and owing to the three credit reporting bureaus, sending mortgage statements, and repeatedly calling him seeking to collect the Mortgage Loan. I will address each allegation *seriatim*.

Bayview does not dispute, and nor could it, that it has reported the Mortgage Loan as due and owing to the credit bureaus since November, 2012. Instead, Bayview relies on *In re Vogt* and *In re Irby* for the proposition that the discharge injunction does not prohibit a secured creditor from reporting an unsatisfied, discharged debt as due and owing to the credit bureaus[54] Ultimately, Bayview's analysis is flawed in several respects.

It is hornbook law that a Chapter 7 "discharge extinguishes *only* 'the personal liability of the debtor . . . . [and that] the Code provides that a creditor's right to foreclose on a mortgage survives or passes through the bankruptcy."[55] Thus, from a legal standpoint, the debt remains technically in existence, and may be enforced against the collateral by those creditors with security interests unaffected by bankruptcy.[56] With this framework in mind, the court in *In re Irby* reasoned that "it is difficult to discern how . . . the sole act of reporting a debt, whose

---

[53] *See In re Nassoko*, 405 B.R. 515, 522 (Bankr. S.D.N.Y. 2009) ("actual or constructive knowledge of the discharged debt will suffice to find a party in violation of the discharge injunction."); *Poole v. U.B. Vehicle Leasing, Inc. (In re Poole)*, 242 B.R. 104, 110 (Bankr. N.D. Ga. 1999) ("notice to those agents may be imputed to the principal").

[54] *In re Vogt*, 257 B.R. at 70; *In re Irby*, 337 B.R. at 295.

[55] *Johnson v. Home State Bank*, 501 U.S. 78, 82-83 (1991) (*quoting* 11 U.S.C. § 524(a)(1)) (emphasis in original). *See also Farrey v. Sanderfoot*, 500 U.S. 291, 297 (1991) ("[o]rdinarily, liens and other secured interests survive bankruptcy.").

[56] Though not relevant in this case, the debt also would remain collectible against co-obligors or other third parties. 11 U.S.C. § 524(e).

existence was never extinguished . . . violates the discharge injunction. All that is being reported is the truth."[57] Nevertheless, technically accurate credit reporting does not, by itself, immunize the act from the discharge injunction as the First Circuit has warned that "even legitimate state-law rights exercised in a coercive manner might [violate] the discharge injunction."[58]

On the facts before me, I need not tarry over these points because Bayview's reports were blatantly inaccurate from the start. It is undisputed that the Property was foreclosed in January, 2011, long before Bayview became the servicer. When that occurred, the *in rem* liability for the Mortgage Loan terminated to the extent it was unsatisfied. Thus, in the absence of any liability *in personam* or *in rem*, the debt was extinguished. For this reason, Bayview's reliance on *In re Vogt* and *In re Irby* is misplaced because it was never a secured creditor.

Admittedly, "[f]alse reporting, if not done to extract payment of the debt, is simply not an act proscribed by the Code."[59] Typically, courts require credit reporting to be coupled with other acts, such as substantial contacts by telephone or mail, to evidence that it was done to coerce payment from the debtor.[60] False reporting, however, more commonly arises in situations where

---

[57] *In re Irby*, 337 B.R. at 295. Performing a similar analysis, the court in *In re Vogt* stopped short of finding the secured creditor's notation was accurate, but nonetheless refused to fault the secured creditor for taking the position that the discharge did not simply "wipe away the debt." *In re Vogt*, 257 B.R. at 70 ("[T]he discharge does not wipe away the debt. It only serves to eliminate the debtor's personal responsibility to pay the debt. The distinction is important, because the initial suggestion here is that the Defendant was somehow in error, or, perhaps, in violation of some provision of the Bankruptcy Code, when it continued to report that, in its records, the Dallas debt was still due and owing, notwithstanding the order of discharge in the Plaintiffs' bankruptcy case. But the Court cannot fault the Defendant for taking this position."); *but see Torres v. Chase Bank USA (In re Torres)*, 367 B.R. 478, 487-488 (Bankr. S.D.N.Y. 2007) ("a credit report that continues to show a discharged debt as 'outstanding,' 'charged off,' or 'past due' is unquestionably inaccurate and misleading, because end users will construe it to mean that the lender still has the ability to enforce the debt personally against the debtor, that is, that the debtor has not received a discharge, that she has reaffirmed the debt notwithstanding the discharge, or that the debt has been declared non-dischargeable.").

[58] *In re Pratt*, 462 F.3d at 19. *See In re Irby*, 337 B.R. at 296.

[59] *In re Vogt*, 257 B.R. at 71.

[60] *See, e.g., In re Irby*, 337 B.R. at 296; *In re Goodfellow*, 298 B.R. at 362; *In re Vogt*, 257 B.R. at 71.

14

a creditor has failed to update the credit report post-petition.[61] This case is atypical because Bayview became the servicer long after both the discharge and foreclosure, had notice of the Debtor's bankruptcy, and yet abandoned BAC's practice of reporting the Mortgage Loan as "Closed 04/09."[62] A post-discharge negative change to the credit report heavily suggests that Bayview sought to collect a discharged debt from the Debtor. In any event, Bayview's additional contacts with the Debtor remove all doubt.

A review of the April Mortgage Statement establishes that it unambiguously seeks to collect a debt. The April Mortgage Statement was sent four months after Bayview acknowledged the Debtor's discharge. Nevertheless, it repeatedly, in bold, demands a payment of $99,313.86 by May 1, 2014, towards an outstanding balance of $254,699.83.[63] The purported disclaimer on the bottom of the second page alters nothing. A creditor cannot avoid the consequences of violating the automatic stay or discharge injunction simply by burying an alternative explanation for a clear demand for payment in fine print.[64]

The Debtor asserts that this was the final mortgage statement he received, but does not indicate when he started receiving them, nor has he produced any others. Ultimately, he has sustained his burden of establishing that Bayview's actions were done to coerce payment from him on account of the discharged Mortgage Loan without additional documentary evidence. In

---

[61] *See In re Torres*, 367 B.R. at 486-487 (collecting cases).

[62] Ex. A, Docket No. 115.

[63] Ex. C, Docket No. 115.

[64] Put simply, fine print that provides that a creditor, who is clearly seeking to collect a debt, should not be viewed as seeking to collect a debt in the event that the creditor is prohibited from doing so is deserving of no weight. *See In re Curtis*, 322 B.R. 470, 485 n. 19 ("The Court acknowledges, but discounts, the unhighlighted language in the April 15, 2002 letter, which suggests that, in the event of discharge in a Chapter 7 case, no personal liability is asserted. This reservation is of little moment. The lender was continuing to insist that the Debtor make payments on the discharged second mortgage.").

the next phase of this proceeding, the unproduced mortgage statements will be relevant to the quantification of the Debtor's damages.

Finally, the Debtor complains that Bayview repeatedly called him seeking to collect the Mortgage Loan between October, 2012, and December, 2013. As stated above, however, there is some confusion as to the timing of those phone calls. Notwithstanding that observation, the Debtor averred that he received number of collection calls from Bayview over some period of time, which Bayview has not disputed. To the contrary, Bayview simply asserts that the Debtor has not provided enough information—the date and representative he spoke to—to satisfy the clear and convincing standard. I disagree for two reasons: (1) Bayview does not deny calling the Debtor; and (2) that information is contained within Bayview's records. Like the unproduced mortgage statements, these details are more relevant to quantification than liability.

In sum, I find Bayview violated the discharge injunction. In light of the outstanding factual questions, further proceedings will be necessary to quantify the Debtor's damages. I note, however, that the Debtor's claim for treble damages under Chapter 93A is improper for two reasons. First, a claim for a violation of Chapter 93A is a cause of action that must be brought as an adversary proceeding.[65] Second, and more importantly, given the Debtor's discharge and the closure of the bankruptcy estate, the Debtor's claim is not "related to a case under title 11" and this Court lacks jurisdiction to hear it.[66]

As a final note, the Motion for Sanctions also alleges that BAC violated the discharge injunction by negligently transferring the servicing rights of the Mortgage Loan to Bayview. Without more, the Debtor has failed to state a claim against BAC, let alone proven a violation by

---

[65] *See* Fed. R. Bankr. P. 7001(9).

[66] *See* 28 U.S.C. § 157(c)(1).

16

clear and convincing evidence. Therefore, the Motion for Sanctions must be denied with respect to BAC.

## V. **CONCLUSION**

In light of the foregoing, I will enter an order granting the Motion for Sanctions as to the liability of Bayview and scheduling the matter for an evidentiary hearing on damages, but denying the Motion for Sanctions as to BAC.

_____
William C. Hillman
United States Bankruptcy Judge

Dated: October 22, 2014

Counsel Appearing:

    Jesse I. Redlener, Dalton & Finegold, LLP, Andover, MA,
        for the Debtor
    Richard C. Demerle, Paul Michienzie, Michienzie & Sawin, LLC, Boston, MA,
        for the Bayview Loan Servicing, LLC